**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

JUL 23 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ZHONGXIANG ZHOU, | No. 11-71492 |
| Petitioner, | Agency No. A088-272-454 |
| v. | |
| LORETTA E. LYNCH,** Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 17, 2015
San Francisco, California

Before: PREGERSON, TALLMAN, and BEA, Circuit Judges.

Zhongxiang Zhou, a native and citizen of China, petitions for review of a

final order of removal from the Board of Immigration Appeals ("BIA"). The BIA

---

*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

**      Loretta E. Lynch is substituted for Eric H. Holder, Jr. as Attorney General of the United States. Fed. R. App. P. 43(c)(2).

dismissed Zhou's appeal of an Immigration Judge's ("IJ") denial of his applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition for review.

Zhou first contests the partial adverse credibility finding made by the IJ and upheld by the BIA. Although the BIA found parts of Zhou's story credible, it discounted Zhou's testimony that family planning officials threatened him with forced sterilization on four different occasions, that it took him ten years of work to raise the money required to pay the family planning fines, and that the work put him in poor physical condition. The BIA discounted this information largely because it did not appear in Zhou's declaration that was filed along with his asylum application. Zhou now contends that the IJ and the BIA erred by not considering that, when he crafted his declaration, spouses of victims of forced abortion were automatically granted refugee status. But during Zhou's hearing, which occurred two years after the law had changed, Zhou testified that his declaration was complete and included every type of harm he had experienced in China. Under the REAL ID Act of 2005, which governs this action, substantial evidence supports the partial adverse credibility determination. *Tamang v. Holder*, 598 F.3d 1083, 1093–94 (9th Cir. 2010).

2

Zhou next alleges that the IJ and the BIA committed legal error by failing to consider his wife's forced abortion as proof of his persecution and resistance to China's family planning policies. Although applicants whose spouses have been physically subjected to forced abortion or sterilization by a foreign government are no longer automatically entitled to refugee status, they may qualify for asylum if they can demonstrate: (1) refugee status based on persecution for "other resistence" to a coercive population control program; (2) a well-founded fear of being persecuted for other resistence to a coercive population control program; (3) that the specific facts of the case justify asylum on grounds other than those in section 601(a), 8 U.S.C. § 1101(a)(42); or (4) that they satisfy the requirements for derivative asylum. *Jiang v. Holder*, 611 F.3d 1086, 1093–94 (9th Cir. 2010).

In considering a petitioner's claim, the court must "consider a spouse's forced abortion or sterilization as 'proof' that an applicant resisted a coercive population control policy." *Id.* at 1094. But that proof is not alone sufficient as "an applicant must provide evidence of resistence in addition to the spouse's forced abortion or sterilization." *Id.* Contrary to Zhou's contentions, the BIA explicitly acknowledged its duty to consider Zhou's wife's forced abortion as proof of his past persecution. After considering this evidence, the BIA found that Zhou had not presented sufficient substantial evidence of other resistence or past persecution

3

based on other resistence. *Id.* at 1095 (noting that a petitioner must show substantial evidence of further persecution beyond a spouse's forced abortion in support of his claims).

Zhou essentially asserts that the IJ and BIA held him to an unnecessarily high standard by requiring him to provide proof of resistence beyond the facts that (1) his wife was subjected to a forced abortion, and (2) he neither supported nor acquiesced to the forced abortion. But the IJ and BIA did not err because we have recently held that more proof of resistence is required. *See He v. Holder*, 749 F.3d 792 (9th Cir. 2014) (denying relief to a Chinese citizen who was fined twice the amount as Zhou for having an additional child, whose wife later suffered a forced abortion and sterilization, and who spent twelve years in hiding because he could not pay the fine). Here, the credible evidence presented by Zhou shows that he picked his wife up at the hospital after the forced abortion where he exchanged words with the family planning official, assisted his wife in concealing a pregnancy, and later paid a fine to the government for violating the policy by having a third child. Although these acts show that he did not acquiesce to the family planning policy, they do not constitute "'overt' and persistent defiance required for a showing of 'other resistence.'" *Id.* at 796. Moreover, although Zhou testified that the family planning officials threatened him with arrest at the hospital,

4

he was not detained and did not suffer any adverse consequences other than being required to pay the fine. Because persecution is an "extreme concept that means something more than . . . harassment," *Donchev v. Mukasey*, 553 F.3d 1206, 1213 (9th Cir. 2009) (internal citations omitted), substantial evidence supports the BIA's determination that Zhou did not establish past persecution.

Finally, Zhou has not proffered any credible evidence to support a well-founded fear of future persecution. Because a reasonable factfinder would not be compelled to find that Zhou either resisted China's family planning policy or suffered persecution, the petition is denied.

**PETITION DENIED.**

*Zhou v. Lynch*, No. 11-71492

PREGERSON, Circuit Judge, dissenting:

An alien may establish eligibility for asylum based upon either past persecution or a well-founded fear of future persecution. *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001). The record in this case compels a finding of eligibility for asylum based on both Zhongxiang Zhou's past persecution and his well-founded fear of future persecution.

In terms of past persecution, the facts in Zhou's case greatly exceed the proof of "other resistance" recently required by *He v. Holder.* In *He,* the petitioner was working a two days' train journey away from his home in another city in China while Chinese authorities forced his wife to undergo an abortion. Unlike Zhou, He did "not describe[] any resistance to China's family planning policies in his own right." 749 F.3d 792, 795 (9th Cir. 2014). The twelve years He spent in hiding were a result of failing to pay a government fine, *not* continued efforts to defy China's family planning authorities by attempting to have another child. *Id.* at 794.

Here, the IJ determined that <u>credible</u> evidence presented by Zhou showed that Zhou <u>did resist</u> China's family planning policies. Zhou picked his wife up at the hospital from what was supposed to be a routine procedure. Instead, government officials had discovered that his wife was pregnant and, because Zhou

and his wife already had two children, forced her to undergo an abortion. Zhou furiously argued with seven family planning officials when he found out what had occurred and was threatened with arrest. Zhou later assisted his wife to flee into hiding for months to conceal her next pregnancy and to protect their unborn child. After the child was born, Zhou was assessed 20,000 RMB by the government for violating the family planning policy by having a third child. Zhou never acquiesced to the family planning policy.

Zhou's courageous acts in helping to conceal his wife during her fourth pregnancy show that, unlike He's "grudging compliance," Zhou "resist[ed] China's family planning policies in his own right [as a father]." *He v. Holder*, 749 F.3d at 795-96. Zhou's defiance of the coercive population control policy fits squarely within the meaning of "other resistance" as defined in our precedents. Zhou's wife's forced abortion ***and*** Zhou's continued support in his wife's successful secret effort to have a third child in defiance of China's population control policy, certainly exceed the burden required to show "other resistance." Further, the birth and open upbringing of his illegal third child constitutes "overt" and persistent defiance of the Chinese government. *Id.* at 796. American asylum law is written to protect such brave resistors rather than to deliver them back into the hands of their persecutors.

2

As the majority points out, persecution is an "extreme concept that means something more than . . . harassment." *Donchev v. Mukasey*, 553 F.3d 1206, 1213 (9th Cir. 2009) (internal citations omitted). It is self-evident and legally true that Zhou's suffering, endured for the safe birth of his third child, amounts to more than harassment. Zhou's flight with his wife from their home to ensure she stayed safely hidden during her pregnancy, in defiance of China's family planning policy, clearly demonstrates past persecution in addition to "other resistance." *See Mendoza-Pablo v. Holder*, 667 F.3d 1308, 1314 (9th Cir. 2012) ("[W]e have consistently recognized, being forced to flee from one's home in the face of an immediate threat of severe physical violence or death is squarely encompassed within the rubric of persecution, as long as the persecutors' actions are motivated by [a] protected consideration"); *see also Jiang v. Holder*, 611 F.3d 1086, 1093-97 (9th Cir. 2010) (finding that a couple's efforts to marry despite China's family planning policies, to conceive a child despite a forced abortion, and to flee from home to avoid police and family planning officers constituted "other resistance" and persecution); *Li v. Ashcroft*, 356 F.3d 1153, 1158-60 (9th Cir. 2004) (en banc) (finding persecution as a result of a forced gynecological examination of a woman and threats of sterilization to her partner).

The majority cites *Jiang v. Holder* to explain its decision to deliver Zhou back into the hands of the Chinese government. 611 F.3d at 1093–94. In *Jiang*, a young man argued that he should receive presumptive eligibility for asylum because of the forced abortion and suffering of his partner. *Jiang* recognized that presumptive eligibility through a partner's forced abortion is no longer valid because of a reinterpretation of INA § 101(a)(42) by the United States Attorney General. *Id.* at 1093. Zhou does not request presumptive eligibility, but rather successfully demonstrates "other resistence," so the majority's reliance on *Jiang* is inapposite.

Further, *Jiang* is not on point here because we also consider threats of future sterilization that exist for Zhou himself, threats that Zhou states were repeated as recently as 2007. According to INA § 101(a)(42), "the term 'refugee' means . . . (B) . . . a person who has been forced to abort a pregnancy *or to undergo involuntary sterilization* . . . and *a person who has a well founded fear that he or she will be forced to undergo such a procedure* . . . and [such a person] shall be deemed to have a well founded fear of persecution on account of political opinion." (emphasis added). According to the plain terms of § 101(a)(42), Zhou is entitled to refugee status.

4

The State Department's Country Reports for China support Zhou's well-founded fear of future persecution through forced sterilization. One such report in the administrative record remarks that "[m]andatory sterilization of couples with two or more children, IUD insertion for women with one child, and abortion for unauthorized pregnancies is now being implemented more strictly . . . local efforts to implement these rules . . . includ[e] the imposition of heavy fines for violations, mandatory late-term abortions, punitive sterilizations, and the destruction of violator's houses and personal property." (citation omitted and emphasis added). Our cases state that "[a] well-founded fear does not require certainty of persecution or even a probability of persecution." *Hoxha v. Ashcroft*, 319 F.3d 1179, 1184 (9th Cir. 2003). "[E]ven a ten percent chance of persecution may establish a well-founded fear." *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987).

Considering now the State Department Country Reports submitted by Zhou addressing forced sterilization—reports that the IJ did not consider when it found Zhou's fear of future persecution incredible and that the BIA did not consider on review—that probability of future persecution exists here. *Aguilar Ramos v. Holder*, 594 F.3d 701, 705 (9th Cir. 2010) ("The failure of the IJ and BIA to consider evidence of country conditions [consisting of a State Department country

5

report] constitutes reversible error."); *Kamalthas v. INS,* 251 F.3d 1279, 1284 (9th Cir. 2001) (holding that the BIA abused its discretion when it denied petitioner's motion to reopen by failing to consider evidence of country conditions); *Al–Saher v. INS,* 268 F.3d 1143, 1147–48 (9th Cir. 2001) ("The BIA must take [country reports] into consideration when assessing whether an applicant qualifies under the Convention [Against Torture].").[1]

Moreover, *Qu v. Gonzales,* teaches that "forced sterilization is a unique kind of persecution. In addition to the physical and psychological trauma that is common to many forms of persecution, sterilization involves drastic and emotionally painful consequences that are unending: The couple is forever denied a pro-creative life together." 399 F.3d 1195, 1202 (9th Cir. 2005). "Involuntary sterilization irrevocably strips persons of one of the important liberties we possess as humans: our reproductive freedom." *Id.* at 1203. The well-founded fear of future sterilization may alone be enough to justify asylum. *See Li*, 356 F.3d at 1161.

---

[1] It is notable that neither the IJ nor BIA considered the China country reports in dismissing Zhou's protection under the United Nations Convention Against Torture ("CAT"). The BIA "has plainly overrelied on its prior adverse credibility finding against [Zhou] and failed to consider evidence of the relevant country conditions in the record." *Kamalthas*, 251 F.3d at 1284. As this court did in *Kamalthas v. I.N.S.*, I would vacate the decision of the BIA and remand to the BIA for consideration of the appropriate country reports as they apply to Zhou's CAT claim. *Id.*

Zhou credibly testified to his wife's forced abortion, and he has demonstrated "other resistance" to China's family planning policies and his past persecution through flight from his home to protect his unborn child and wife. He has also testified to a well-founded fear of future persecution by citing to personal threats of sterilization, a fear supported by the State Department's Country Reports for China.

As we found in *Qu*, and examining the totality of the circumstance as required by *Jiang*, I believe that Zhou's claim for asylum is compelled by the law and facts of this case. Thus I would grant the petition, reverse the decision of the BIA, and remand with instructions that the Attorney General exercise her discretion on whether Zhou should be granted asylum.