PREGERSON, Circuit Judge,
dissenting:
An alien may establish eligibility for asylum based upon either past persecution or a well-founded fear of future persecution. Al-Harbi v. INS, 242 F.3d 882, 888 (9th Cir.2001). The record in this case compels a finding of eligibility for asylum based on both Zhongxiang Zhou’s past persecution and his well-founded fear of future persecution.
In terms of past persecution, the facts in Zhou’s case greatly exceed the proof of “other resistance” recently required by He v. Holder. In He, the petitioner was working a two days’ train journey away from his home in another city in China while Chinese authorities forced his wife to undergo an abortion. Unlike Zhou, He did “not describe[] any resistance to China’s family planning policies in his own right.” 749 F.3d 792, 795 (9th Cir.2014). The twelve years He spent in hiding were a result of failing to pay a government fine, not continued efforts to defy China’s family planning authorities by attempting to have another child. Id. at 794.
*911 Here, the IJ determined that credible evidence presented by Zhou showed that Zhou did resist China’s family planning policies. Zhou picked his wife up at the hospital from what was supposed to be a routine procedure. Instead, government officials had discovered that his wife was pregnant and, because Zhou and his wife already had two children, forced her to undergo an abortion. Zhou furiously argued with seven family planning officials when he found out what had occurred and was threatened with arrest. Zhou later assisted his wife to flee into hiding for months to conceal her next pregnancy and to protect their unborn child. After the child was bom, Zhou was assessed 20,000 RMB by the government for violating the family planning policy by having a third child. Zhou never acquiesced to the family planning policy.
Zhou’s courageous acts in helping to conceal his wife during her fourth pregnancy show that, unlike He’s “grudging compliance,” Zhou “resisted] China’s family planning policies in his own right [as a father].” He v. Holder, 749 F.3d at 795-96. Zhou’s defiance of the coercive population control policy fits squarely within the meaning of “other resistance” as defined in our precedents. Zhou’s wife’s forced abortion and Zhou’s continued support in his wife’s successful secret effort to have a third child in defiance of China’s population control policy, certainly exceed the burden required to show “other resistance.” Further, the birth and open upbringing of his illegal third child constitutes “overt” and persistent defiance of the Chinese government. Id. at 796. American asylum law is written to protect such brave resistors rather than to deliver them back into the hands of their persecutors.
As the majority points out, persecution is an “extreme concept that means something more than ... harassment.” Don-chev v. Mukasey, 553 F.3d 1206, 1213 (9th Cir.2009) (internal citations omitted). It is self-evident and legally true that Zhou’s suffering, endured for the safe birth of his third child, amounts to more than harassment. Zhou’s flight with his wife from their home to ensure she stayed safely hidden during her pregnancy, in defiance of China’s family planning policy, clearly demonstrates past persecution in addition to “other resistance.” See Mendoza-Pablo v. Holder, 667 F.3d 1308, 1314 (9th Cir.2012) (“[W]e have consistently recognized, being forced to flee from one’s home in the face of an immediate threat of severe physical violence or death is squarely encompassed within the rubric of persecution, as long as the persecutors’ actions are motivated by [a] protected consideration”); see also Jiang v. Holder, 611 F.3d 1086, 1093-97 (9th Cir.2010) (finding that a couple’s efforts to marry despite China’s family planning policies, to conceive a child despite a forced abortion, and to flee from home to avoid police and family planning officers constituted “other resistance” and persecution); Li v. Ashcroft, 356 F.3d 1153, 1158-60 (9th Cir.2004) (en banc) (finding persecution as a result of a forced gynecological examination of a woman and threats of sterilization to her partner).
The majority cites Jiang v. Holder to explain its decision to deliver Zhou back into the hands of the Chinese government. 611 F.3d at 1093-94. In Jiang, a young man argued that he should receive presumptive eligibility for asylum because of the forced abortion and suffering of his partner. Jiang recognized that presumptive eligibility through a partner’s forced abortion is no longer valid because of a reinterpretation of INA § 101(a)(42) by the United States Attorney General. Id. at 1093. Zhou does not request presumptive eligibility, but rather successfully demonstrates “other resistence,” so the majority’s reliance on Jiang is inapposite.
*912 Further, Jiang is not on point here because we also consider threats of future sterilization that exist for Zhou himself, threats that Zhou states were repeated as recently as 2007. According to INA § 101(a)(42), “the term ‘refugee’ means ... (B) ... a person who has been forced to abort a pregnancy or to undergo involuntary sterilization ... and a person who has a well founded fear that he or she will be forced to undergo such a procedure ... and [such a person] shall be deemed to have a well founded fear of persecution on account of political opinion.” (emphasis added). According to the plain terms of § 101(a)(42), Zhou is entitled to refugee status.
The State Department’s Country Reports for. China support Zhou’s well-founded fear of future persecution through forced sterilization. One such report in the administrative record remarks that “[m]andatory sterilization of couples with two or more children, IUD insertion for women with one child, and abortion for unauthorized pregnancies is now being implemented more strictly ... local efforts to implement these rules ... includ[e] the imposition of heavy fines for violations, mandatory late-term abortions, punitive sterilizations, and the destruction of violator’s houses and personal property.” (citation omitted and emphasis added). Our cases state that “[a] well-founded fear does not require certainty of persecution or even a probability of persecution.” Hoxha v. Ashcroft, 319 F.3d 1179, 1184 (9th Cir.2003). “[E]ven a ten percent chance of persecution may establish a well-founded fear.” Al-Harbi v. INS, 242 F.3d 882, 888 (9th Cir.2001); see also INS v. Cardoza-Fonseca, 480 U.S. 421, 440, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).
Considering now the State Department Country Reports submitted by Zhou addressing forced sterilization — reports that the IJ did not consider when it found Zhou’s fear of future persecution incredible and that the BIA did not consider on review — that probability of future persecution exists here. Aguilar-Ramos v. Holder, 594 F.3d 701, 705 (9th Cir.2010) (“The failure of the IJ and BIA to consider evidence of country conditions [consisting of a State Department country report] constitutes reversible error.”); Kamalthas v. INS, 251 F.3d 1279, 1284 (9th Cir.2001) (holding that the BIA abused its discretion when it denied petitioner’s motion to reopen by failing to consider evidence of country conditions); Al-Saher v. INS, 268 F.3d 1143, 1147-48 (9th Cir.2001) (“The BIA must take [country reports] into consideration when assessing whether an applicant qualifies under the Convention [Against Torture].”).[1]
Moreover, Qu v. Gonzales, teaches that “forced sterilization is a unique kind of persecution. In addition to the physical and psychological trauma that is common to many forms of persecution, sterilization involves drastic and emotionally painful consequences that are unending: The couple is forever denied a pro-creative life together.” 399 F.3d 1195, 1202 (9th Cir.2005). “Involuntary sterilization irrevocably strips persons of one of the important liberties we possess as humans: our reproductive freedom.” Id. at 1203. The well- *913 founded fear of future sterilization may alone be enough to justify asylum. See Li, 356 F.3d at 1161.
Zhou credibly testified to his wife’s forced abortion, and he has demonstrated “other resistance” to China’s family planning policies and his past persecution through flight from his home to protect his unborn child and wife. He has also testified to a well-founded fear of future persecution by citing to personal threats of sterilization, a fear supported by the State Department’s Country Reports for China.
As we found in Qu, and examining the totality of the circumstance as required by Jiang, I believe that Zhou’s claim for asylum is compelled by the law and facts of this case. Thus I would grant the petition, reverse the decision of the BIA, and remand with instructions that the Attorney General exercise her discretion on whether Zhou should be granted asylum.

. It is notable that neither the IJ nor BIA considered the China country reports in dismissing Zhou’s protection under the United Nations Convention Against Torture (“CAT”). The BIA “has plainly overrelied on its prior adverse credibility finding against [Zhou] and failed to consider evidence of the relevant country conditions in the record.” Kamal-thas, 251 F.3d at 1284. As this court did in Kamalthas v. I.N.S., I would vacate the decision of the BIA and remand to the BIA for consideration of the appropriate country reports as they apply to Zhou’s CAT claim. Id.