**Manuel JORGE–TZOC, Petitioner,**

**v.**

**Alberto GONZALES, U.S. Attorney General, U.S. Department of Justice, Respondents.**

**Docket No. 04–1738–AG.**

United States Court of Appeals, Second Circuit.

NAC Calendar: Dec. 19, 2005.

Decided: Jan. 18, 2006.

Anne Pilsbury, Central American Legal Assistance, Brooklyn, NY, for Petitioner.

Jonathan S. Gasser, Acting United States Attorney for the District of South Carolina; Christie V. Newman, Assistant United States Attorney, Columbia, SC, for Respondents.

Before: STRAUB, POOLER, and SOTOMAYOR, Circuit Judges.

PER CURIAM.

Manuel Jorge–Tzoc petitions for review of an order of the Board of Immigration Appeals ("BIA") that affirmed without opinion an order of an immigration judge ("IJ"). Although the order under review denied asylum, withholding of removal, and relief pursuant to the Convention Against Torture, Jorge–Tzoc limits his claims of error to the IJ's denial of asylum.

At a hearing before the IJ, Jorge–Tzoc testified that he and his family are Mayan Indians who have been singled out by the government of Guatemala for persecution. In 1982, when Tzoc was approximately seven years old, his sister, her husband, and her husband's mother, all of whom lived in a neighboring village, were fatally

shot by soldiers.[1] Although many other families fled the village as the army approached, Jorge–Tzoc's family members were too poor to leave and were slaughtered along with about fifteen other families. Jorge–Tzoc's family was unable to retrieve his sister's body due to the family's fear of the conditions in her village.

In Jorge–Tzoc's hometown of Chiche, at least four additional family members were killed. Although Jorge–Tzoc conceded that he did not witness any of the killings, he saw "a lot of bodies," including the bullet-ridden body of one of his cousins. Jorge–Tzoc's mother was afraid to go out to shop at the market.

About three weeks after his sister's murder, Jorge–Tzoc and his family left Chiche where they had land and animals and fled to Quiche. Jorge–Tzoc's father sold his land in Chiche so that the family could survive. The family stayed in Quiche for about a year and a half. When they returned to Chiche, the soldiers were gone, but their house was full of bullet holes, and Jorge–Tzoc's father never recovered his animals.

Jorge–Tzoc left Guatemala in 1993 when he was approximately eighteen and entered this country illegally. He first filed an asylum application after his 1996 arrest for illegal entry.

In an oral decision rendered at the close of Jorge–Tzoc's hearing, the IJ found his testimony "credible and adequate to support his claim." However, she also found that he had not proven past persecution on a protected ground because, in a letter submitted at the hearing, Jorge–Tzoc's mother stated that she believed the guerrillas were responsible for the killings. Apparently viewing petitioner and his family as simply having been caught in the strife between the guerrillas and the army, the IJ held that "[h]arm arising from general civil strife does not amount to persecution."

The IJ also found that Jorge–Tzoc had not established a likelihood of future persecution if he were forced to return to Guatemala. She found significant the eleven-year gap between the alleged acts of persecution and Jorge–Tzoc's flight to the United States as well as his failure to seek asylum soon after arrival. She also relied on a 1996 peace accord and the continued residence without incident of some of Jorge–Tzoc's family members in Guatemala. Finally, the IJ found that Jorge–Tzoc had not established entitlement to relief under the Convention Against Torture.

The BIA affirmed without opinion on March 10, 2004, and Jorge–Tzoc filed his petition for review on April 8, 2004. As previously noted, Jorge–Tzoc limits his claims of error to the asylum denial.

## DISCUSSION

 In order to be eligible for asylum, an applicant must show that he has suffered past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion or that he has a well founded fear of future persecution on one of these grounds. *Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 148 (2d Cir.2003). We review the IJ's—or BIA's—determination under the substantial evidence standard, "reversing only if 'no reasonable fact-finder could have failed to find' that petitioner suffered past persecution or had a well-founded fear of future persecution." *Ramsameachire v. Ashcroft*, 357 F.3d 169, 177 (2d Cir.2004) (quoting *Diallo v. INS*, 232 F.3d 279, 287 (2d

---

1. Jorge–Tzoc also submitted death certificates for his sister and her husband, which showed that both were killed by multiple gunshot wounds.

Cir.2000)). However, serious legal errors such as failure to consider the entire record or reliance on factors that have no nexus to the finding made, ordinarily will require vacatur and remand for further consideration by the BIA or IJ. *Cao He Lin v. DOJ*, 428 F.3d 391, 401 (2d Cir. 2005).

With these principles in mind, we begin with the IJ's finding that Jorge–Tzoc failed to establish past persecution. Although it was reasonable for the IJ to take into account the letter from Jorge–Tzoc's mother, which indicated her belief that the guerrillas were responsible for the killings of Jorge–Tzoc's family members, the IJ failed to consider evidence in the record more directly suggesting that army members or paramilitaries were behind the killings. *See Jin Shui Qiu*, 329 F.3d at 149 (holding that the agency must consider all factual assertions and evidence supporting a factor potentially giving rise to eligibility unless the evidence supporting a factor is too insignificant to merit discussion).

■ The June 23, 1994, Oslo accord concerning the Guatemalan civil war established the Comisíon para el Esclarecimiento Histórico or the Commission for Historical Clarification ("CEH") "to clarify with objectivity, equity and impartiality, the human rights violations and acts of violence connected with the armed confrontation that caused suffering among the Guatemalan people." *See Guatemala Memory of Silence Report of the Commission for Historical Clarification Conclusions and Recommendations*, Prologue, available at http://shr.aaas.org/guatemala/ceh/report/english/toc.html (last visited December 20, 2005) ("Guatemala Memory of Silence"). In response, CEH published *Guatemala Memory of Silence*. Portions of this document in the administrative record include the following factual assertions relevant to determining the identity of the perpetrators of the massacre in Jorge–Tzoc's village and the surrounding area and/or to suggesting that violence was aimed by the army at a particular social group, the Mayans. First, 83% of the identified victims of the violence were Mayan. *Id.* at conclusion 1. Second, "state forces and related paramilitary groups were responsible for 93% of the violations documented by the CEH, including 92% of the arbitrary executions and 91% of forced disappearances." *Id.* at conclusion 15. Third, "throughout the armed confrontation the Army designed and implemented a strategy to provoke terror in the population [which] became the core element of the Army's operations, including those of a strictly military nature as well [as] those of psychological nature and those that were called 'development' operations." *Id.* at conclusion 44. Fourth, when the confrontation between army and guerrillas escalated between 1974 and 1983, "Mayans as a group in several different parts of the country were identified by the Army as guerrilla allies.... [I]n the majority of cases, the identification of Mayan communities with the insurgency was intentionally exaggerated by the State, which, based on traditional racist prejudices, used this identification to eliminate any present or future possibilities of the people providing help for, or joining an insurgent project." *Id.* at conclusion 31. Fifth, "[t]he massacres, scorched earth operations, forced disappearances and executions of Mayan authorities, leaders and spiritual guides, were not only an attempt to destroy the social base of the guerrillas, but above all, to destroy the cultural values that ensured cohesion and collective action in Mayan communities." *Id.* at conclusion 32. In addition, the CEH verified the killings in Chiche by soldiers of two individuals surnamed Tzoc and thus potentially related to Jorge–Tzoc. *Id.* at 878, 904.

The IJ's failure to take the entire record into consideration was error, *see Cao He Lin,* 428 F.3d at 403. In this case, the error's significance is magnified because neither Jorge–Tzoc, who said the army committed the massacres, nor his mother, who said the guerrillas were responsible, claimed to have personally witnessed the events in question, although Jorge–Tzoc did testify that he saw soldiers in the village but did not see guerrillas. This lack of first-hand knowledge makes the objective reports of the CEH that much more important.

■■ In support of her holding on past persecution, the IJ also noted that Jorge–Tzoc "was never victimized directly by [the] killings." Respondent contends that this finding is substantial evidence that Jorge–Tzoc did not experience persecution. Indeed, in *Melgar de Torres v. Reno,* 191 F.3d 307, 313 n. 2 (2d Cir.1999), we held that the killing of an uncle could not "be considered past persecution of" the petitioner. However, we believe that the circumstances of this case are distinguishable. The petitioner in *Melgar de Torres* was an adult who offered no objective evidence that her uncle's killing was politically motivated. *Id.* at 313. In contrast, Jorge–Tzoc was a child at the time of the massacres and thus necessarily dependent on both his family and his community. He also offered substantial evidence of a pervasive campaign carried out by the army against Mayans in the area in which he lived. The CEH documented two 1982 army killings of persons named Tzoc in Jorge–Tzoc's village. Further, while the family remained in their village, Jorge–Tzoc's mother was afraid to go out of their home to obtain needed groceries, and Jorge–Tzoc viewed the bullet-ridden body of his cousin lying on the ground. The army's campaign, according to Jorge–Tzoc's testimony, resulted in his relocation, along with many family members to one room in Quiche where they struggled to survive. In addition, Jorge–Tzoc's father lost his land and his animals as a result of the move. This combination of circumstances could well constitute persecution to a small child totally dependent on his family and community. *See Poradisova v. Gonzales,* 420 F.3d 70, 79–80 (2d Cir.2005) (holding that an IJ must consider events cumulatively to determine whether past persecution has occurred). As the Seventh Circuit has noted, "age can be a critical factor in the adjudication of asylum claims and may bear heavily on the question of whether an applicant was persecuted or whether she holds a well-founded fear of future persecution." *Liu v. Ashcroft,* 380 F.3d 307, 314 (7th Cir.2004); *see also* Jeff Weiss, *U.S. Dep't of Justice, Guidelines for Children's Asylum Claims,* at 1998 WL 34032561 (1998) ("As in all asylum cases, the Asylum Officer must assess whether the harm that the child fears or has suffered is serious enough to constitute 'persecution' ... The harm a child fears or has suffered, however, may be relatively less than that of an adult and still qualify as persecution.").

Because the IJ failed to take into account significant evidence and to address the harms Jorge–Tzoc and his family incurred cumulatively and from the perspective of a small child, vacatur of the determination that Jorge–Tzoc failed to establish past persecution is required. On remand, the IJ should consider the CEH report and other materials in the record indicating that the Guatemalan Army carried out massacres of Mayans in Jorge–Tzoc's region during 1982. She should then determine whether the massacres and their sequelae in Jorge–Tzoc's family, viewed from the perspective of a child of seven, constituted past persecution.

■ The IJ also found that Jorge–Tzoc failed to establish a well founded fear of future persecution. For this conclusion, she relied on the continued presence of Jorge–Tzoc's family members in their village, Jorge–Tzoc's own continued presence in Guatemala for eleven years, his failure to apply for asylum as soon as he arrived, and the improved conditions in Guatemala after the 1996 peace accords. If the IJ finds on remand that Jorge–Tzoc established past persecution, a different analysis will be required. Past persecution creates a presumption of future persecution, which the government can then rebut by demonstrating that (1) there has been a fundamental change in circumstances in Guatemala so that Jorge–Tzoc's fear can no longer be considered well founded; or (2) he could avoid persecution by moving to another part of Guatemala. 8 C.F.R. § 208.13(b)(1)(i)(A),(B).

## CONCLUSION

For the reasons we have discussed, we vacate the IJ's finding that Jorge–Tzoc did not establish entitlement to asylum as well as the removal order. We leave undisturbed, based on abandonment of these issues, the findings that Jorge–Tzoc was not entitled to withholding of removal or relief pursuant to the Convention Against Torture. The stay of removal previously granted is vacated because we have completed our consideration of this petition. Finally, we remand for further proceedings consistent with this opinion.