03-40487-ag
Jiang v. Gonzales

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2004

(Submitted: July 12, 2005          Decided: August 31, 2007)

Docket No. 03-40487-ag

- - - - - - - - - - - - - - - - - - - - -x

TAO JIANG,

               Petitioner,

       -v.-

ALBERTO GONZALES, Attorney General of
the United States,[*]

        Respondent.

- - - - - - - - - - - - - - - - - - - - -x

    Before:      JACOBS, Chief Judge, PARKER, Circuit Judge, and HURD, District Judge.[**]

Petition for review of a final decision and order of the Board of Immigration Appeals reversing, on an appeal by the Department of Homeland Security, the IJ's grant of

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto Gonzales is substituted for his predecessor, Attorney General John Ashcroft, as respondent.

[**] The Honorable David N. Hurd, United States District Judge for the Northern District of New York, sitting by designation.

humanitarian asylum.

The petition is denied.

Alexander K. Yu, New York, NY, for Petitioner.

Gary L. Hayward, Assistant United States Attorney, for Matthew G. Whitaker, United States Attorney for the District of Iowa, Des Moines, IA, for Respondent.

DENNIS JACOBS, Chief Judge:

Tao Jiang, a native and citizen of China, petitions for review of an August 7, 2003 order of the Board of Immigration Appeals ("BIA"), which sustained the Department of Homeland Security's ("DHS") appeal from Immigration Judge ("IJ") Anthony J. Randall's November 9, 2001 grant of humanitarian asylum. Jiang cites the forced sterilization of his mother, occasioned by Jiang's own birth, and economic hardship suffered by Jiang and his family when his mother failed to fully recover from the procedure. Because Jiang relies only on his mother's past persecution by reason of political opinion, and has shown no valid nexus between the economic hardship he suffered and any protected ground of his own, we agree with the BIA that he suffered no past persecution. The petition is denied.

2

## BACKGROUND

Petitioner Tao Jiang, whom the IJ found credible, has given the following account.

Jiang was the second child born to a family in Fujian Province, China. His birth, on February 28, 1980, violated population control laws. Three months later, government officials forced Jiang's mother to undergo sterilization. The sterilization procedure had lingering health effects. Although his mother continued to work, she was less productive in her farm work and housework, and often sick with symptoms that included high blood pressure and stomach pain. Jiang's father therefore often stayed away from work to care for the children. These conditions caused economic hardship for the family. Jiang was forced to work during his school years, was often absent, lagged behind, and was unable to attend middle school after completing elementary school. After his father died in 1996, leaving the family unable to support itself, Jiang left China to escape privation. He testified that his mother also wished to leave China, but was unable to do so.

Jiang's original application sought asylum on

3

religious grounds, without mention of his mother's sterilization; but the application was amended to assert a claim that he was seeking to escape persecution on the account of his parents' violation of population control laws.

After an evidentiary hearing, the IJ found Jiang's testimony credible and granted humanitarian asylum in an oral opinion on November 9, 2001.[1] Although Jiang had entered the United States for purely economic reasons, the IJ decided that (whether or not there was a likelihood of future persecution) the economic hardship suffered by Jiang and his family in the wake of his mother's sterilization was sufficiently harsh past persecution to entitle Jiang to humanitarian asylum under In re Chen, 20 I. & N. Dec. 16 (B.I.A. 1989). The IJ concluded that Jiang had not himself been persecuted on account of any political opinion of his mother's that was imputed to him; rather, because Jiang's

---

[1] While asylum must be sought within one year of arrival, see 8 U.S.C. § 1158(a)(2)(B), Jiang did not apply until several years had passed. The IJ concluded that Jiang's reaching 21 years of age in 2001 constituted a change in circumstances under 8 U.S.C. § 1158(a)(2)(D), and that Jiang's application could therefore be considered notwithstanding its untimeliness. The DHS did not appeal this determination before the BIA, and we do not address it.

4

mother had been persecuted for political opinion when she was forced to undergo sterilization, Jiang was "affected by the mother's political activities" and was therefore persecuted himself when the procedure rendered her unable to adequately support Jiang.

DHS appealed to the BIA. On August 7, 2003, the BIA sustained the appeal, deferring to the IJ's favorable credibility finding but holding as a matter of law that Jiang was not entitled to humanitarian asylum because he had suffered no past persecution. The BIA reasoned that Jiang was not entitled to rely on his mother's sterilization operation itself because he "has not been subjected to forced sterilization nor has he been threatened with such action" and he "personally . . . suffered no harm by the government." The BIA rejected the idea that the post-sterilization economic hardship constituted persecution, because "there is no evidence that the government deliberately imposed substantial economic disadvantage upon the applicant and his family, especially on account of a protected ground."

This petition for review followed.

**DISCUSSION**

**I**

Jiang argues that his experiences in China constituted past persecution because he and his family suffered economic hardship as the direct result of his mother's forced sterilization, an act which itself is clearly deemed persecution of his mother by reason of political opinion under 8 U.S.C. § 1101(a)(42).

When the BIA issues an opinion rejecting the IJ's decision, the BIA's opinion "becomes the basis for judicial review of the decision of which the alien is complaining." Yan Chen v. Gonzales, 417 F.3d 268, 271 (2d Cir. 2005) (citation omitted). We review questions of law de novo, including the application of law to undisputed facts. Uwais v. U.S. Att'y Gen., 478 F.3d 513, 517 (2d Cir. 2007). We do not owe Chevron deference to statutory interpretations set forth in a non-precedential BIA decision by a single board member, such as the BIA decision here. Rotimi v. Gonzales, 473 F.3d 55, 57 (2d Cir. 2007) (citing Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984)).

The agency's factual findings "are conclusive unless

6

any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We review such findings under the substantial evidence standard, which requires that they be supported by "reasonable, substantial and probative evidence in the record when considered as a whole." Iouri v. Ashcroft, 487 F.3d 76, 81 (2d Cir. 2007) (quoting Wu Biao Chen v. INS, 344 F.3d 272, 275 (2d Cir. 2003)) (internal quotation marks omitted).

To be eligible for asylum, a petitioner must show that he meets the definition of "refugee" in 8 U.S.C. § 1101(a)(42), either because he has suffered past persecution on account of "race, religion, nationality, membership in a particular social group, or political opinion," or that he has a well-founded fear that, if deported, he will suffer persecution on account of one of those protected grounds. See Karaj v. Gonzales, 462 F.3d 113, 116 (2d Cir. 2006) (citing Jin Shui Qiu v. Ashcroft, 329 F.3d 140, 148 (2d Cir. 2003)). In the analysis of past persecution,

> a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion.

7

8 U.S.C. § 1101(a)(42).  A showing of past persecution raises a rebuttable presumption of a well-founded fear of future persecution.  Karaj, 462 F.3d at 116.  But even if there is no probability of future persecution, an applicant may be granted asylum on humanitarian grounds if "[t]he applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution."  8 C.F.R. § 208.13(b)(1)(iii), (A).  See Li Yong Cao v. U.S. Dep't of Justice, 421 F.3d 149, 156 (2d Cir. 2005).

**II**

The BIA held as a matter of law that because Jiang only alleged that he suffered economic hardship as a result of his mother's forced sterilization, he failed to show past persecution on a protected ground.

In Shi Liang Lin v. United States Department of Homeland Security, we held that under the plain language of 8 U.S.C. § 1101(a)(42), a claim of persecution based solely on a forced abortion or sterilization procedure without evidence of any further harm can only be brought by the

8

individual who has undergone the procedure. --- F.3d ---, No. 02-4611-ag, 2007 WL 2032066, at *9-10 (2d Cir. July 16, 2007) (en banc). So to the extent Jiang's claim is based on his mother's sterilization itself, we are bound by Shi Liang Lin, and we affirm the BIA's conclusion that he suffered no past persecution on this basis.

But Jiang goes further. He asserts that, even if the procedure itself may not have inflicted persecution on him, his mother's subsequent illness and its economic impact on the family did. As a general principle, an asylum applicant cannot claim past persecution based solely on harm that was inflicted on a family member on account of that family member's political opinion or other protected characteristic. See Melgar de Torres v. Reno, 191 F.3d 307, 313 n.2 (2d Cir. 1999). That is because an applicant must rely upon harm the applicant has suffered individually. "[T]he statutory scheme unambiguously dictates that applicants can become candidates for asylum relief only based on persecution that they themselves have suffered or must suffer." Shi Liang Lin, 2007 WL 2032066, at *8. At the same time, if an applicant's family member was harmed as a means of targeting the applicant on some protected ground,

9

that harm may constitute persecution of the applicant. See Ahmadshah v. Ashcroft, 396 F.3d 917, 920 (8th Cir. 2005) ("Acts of violence against family members may demonstrate persecution if they show a pattern of persecution tied to the petitioner."). Moreover, BIA precedent in the context of humanitarian asylum (the relief originally granted here) reflects that harm to family members is an important factor in evaluating the severity of the persecution of applicants who have suffered direct harm themselves. See, e.g., In re Chen, 20 I. & N. Dec. 16 (B.I.A. 1989). Also, we have held the agency must consider the totality of the circumstances in each case to determine whether harm suffered by family members in combination with other factors may constitute past persecution of the applicant, even if government authorities neither directly harmed the applicant nor harmed the family member in order to target the applicant. See Jorge-Tzoc v. Gonzales, 435 F.3d 146, 150 (2d Cir. 2006). This would presumably only be so where, as in Jorge-Tzoc, the applicant not only shares (or is perceived to share) the characteristic that motivated persecutors to harm the family member, but was also within the zone of risk when the family member was harmed, and suffered some continuing hardship

10

after the incident.[2]  Under Jorge-Tzoc, the question whether the applicant experienced harm "directly" is not in itself dispositive; the question is whether the applicant's cumulative experiences were sufficiently severe as to rise to the level of persecution.

Mindful of these principles, we conclude that the BIA did not err.  Jiang's mother's illness--caused by the government--and Jiang's resulting hardship did not constitute past persecution of him on account of a protected ground.  Even assuming that the privations Jiang suffered rose to the level of persecution as a matter of severity,

---

[2]  While he was a small child, the petitioner in Jorge-Tzoc (a Guatemalan of Mayan descent) survived a massacre that was part of a "pervasive campaign carried out by the [Guatemalan] army against Mayans in the area" around the petitioner's village.  435 F.3d at 150.  His sister and her family were killed by the army in a neighboring village, and several other relatives and neighbors were killed in the petitioner's own village.  Id. at 147-48.  He did not witness the killings, but saw the soldiers and saw his cousin's bullet-riddled corpse on the ground in the massacre's aftermath; his family lost land and property when the massacre forced them to relocate, and they struggled to survive.  Id. at 150.  This Court remanded after rejecting the notion that in such circumstances, the lack of any "direct" harm to the petitioner necessarily supported the agency's conclusion that he had suffered no past persecution; the agency was required to evaluate the cumulative impact of the petitioner's experiences, taking into account the petitioner's sensitive age at the time. Id.

11

the record evidence demonstrates no nexus to a protected ground in Jiang's individual case. Unlike in Jorge-Tzoc, the persecution Jiang's mother suffered was not inflicted on account of some characteristic Jiang shared with his mother. As we reasoned in Shi Liang Lin, § 1101(a)(42) provides that those who have been subject to forced sterilization are "deemed" to have suffered persecution by reason of political opinion; but this constructive political opinion--whatever its exact contours--cannot be presumed to have been imputed to the family of the individual who undergoes the procedure; there must be some evidence that it was so imputed. See 2007 WL 2032066, at *8. Evidence of imputed political opinion may be direct or circumstantial, and need only show that "those who harmed [Jiang] were in part motivated by an assumption that his political views were antithetical to those of the Government." In re S-P-, 21 I. & N. Dec. 486, 492, 496 (B.I.A. 1996). The government appears to have taken no further action against the family after persecuting Jiang's mother.[3] And Jiang has adduced no evidence that

---

[3] Jiang at one point testified vaguely that he lived with his grandparents because he was afraid that the village cadre would target his parents; and he stated without elaboration that at some undefined time in the past, "I saw the village government come to our home to arrest people."

12

government actors imputed to him the political opinion his mother is deemed to have had by virtue of the forced sterilization.[4]  We therefore agree with the BIA that Jiang cannot claim a valid nexus to a protected ground even if the hardship he suffered was sufficiently severe to constitute persecution.

Nothing in In re Chen is inconsistent with our conclusion.  In In re Chen, the petitioner's father--a Christian minister--was dragged through the streets dozens of times while in captivity and on one occasion was burned badly when he was thrown into a bonfire of burning bibles. 20 I. & N. Dec. at 19-20.  The BIA concluded that these traumatic events aggravated the emotional impact of the harm

---

The IJ immediately asked a clarifying question: "Did anything bad happen to you when you were in China?"  Jiang responded: "No."  This equivocal mention of the village cadre was not the basis for the IJ's original grant of humanitarian asylum which Jiang seeks reinstate; the IJ's view was that the family's being placed in a "precarious economic position that constitute[d] persecution" was "the only winning theory" upon which the record evidence could justify asylum.

[4] There is certainly no evidence that Jiang--a three month old baby when his mother was forcibly sterilized-- engaged in any "other resistance" against the government's coercive population control policy; such resistance supplies a nexus to political opinion under 8 U.S.C. § 1101(a)(42). See Shi Liang Lin, 2007 WL 2032066, at *10.

13

Chen himself suffered--repeated physical abuse because of his family's religion while he was in Chinese government custody as a boy.  The circumstances constituted past persecution so severe as to justify a discretionary grant of asylum for humanitarian reasons irrespective of the likelihood of future persecution.  Id. at 21 ("Given what happened to his father, and given the manner in which he spent much of his boyhood, his fear of repatriation is understandable.").  Jiang's case is not analogous: (1) Jiang suffered no abuse at the hands of government officials and (2) there is no indication that the government treated Jiang as if he shared the characteristic that triggered his parent's persecution.

The persecution of an individual such as Jiang's mother may stir anguish among all of her friends, relatives, and associates, and may bring economic loss for the family; but nothing in our precedent or in the BIA's suggests that these consequences can constitute persecution giving rise to refugee status for any of those people unless they share--or are imputed to share--the characteristic that motivated the persecution.

14

\*   \*   \*

For the foregoing reasons, we deny the petition for review.