**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUAN UBALDO MENDOZA-PABLO,

*Petitioner,*

v.

ERIC H. HOLDER Jr., Attorney
General,

*Respondent.*

No. 07-73592

Agency No.
A 97-589-307

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
July 21, 2011—San Francisco, California

Filed February 7, 2012

Before: A. Wallace Tashima and Johnnie B. Rawlinson,
Circuit Judges, and Jed S. Rakoff, Senior District Judge.*

Opinion by Judge Rakoff;
Partial Concurrence and Partial Dissent by Judge Rawlinson

---

*The Honorable Jed S. Rakoff, Senior United States District Judge for
the Southern District of New York, sitting by designation.

## COUNSEL

Robert L. Lewis, Law Office of Robert L. Lewis, Oakland Califoria, for the petitioner.

Gregory G. Katsas, Daniel E. Goldman, and Yamileth G. Handuber, United States Department of Justice, Civil Division/Office of Immigration Litigation, Washington, DC, for the respondent.

## OPINION

RAKOFF, Senior District Judge:

Petitioner Juan Ubaldo Mendoza-Pablo petitions for review of a decision of the Board of Immigration Appeals ("BIA") denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") on the ground, *inter alia*, that Mendoza-Pablo had

not been the victim of past persecution because he was never "personally challenged or confronted by any potential persecutor." We grant the petition.

The pertinent facts are as follows.[1] Mendoza-Pablo is a member of the Mam Mayan group, an indigenous ethnic group whose members live predominantly in Guatemala. His family originally hailed from the village of Todos Santos. In 1982, when Mendoza-Pablo was born, the Guatemalan government was engaged in a fierce and largely one-sided civil war with insurgent groups predominantly of Mayan ethnicity. In *Jorge-Tzoc v. Gonzales*, 435 F.3d 146 (2d Cir. 2006), the Second Circuit, citing the Report of the "Commission for Historical Clarification" (which was established by the June 23, 1994 Oslo Accord as part of the United Nations-brokered peace process), described this conflict as follows:

> . . . 83% of the identified victims of the violence were Mayan . . . [and] state forces and related paramilitary groups were responsible for 93% of [documented human rights] violations . . . . [T]hroughout the armed confrontation the [Guatemalan Government] designed and implemented a strategy to provoke terror in the population . . . . Mayans as a group . . . were identified by the Army as guerrilla allies . . . [leading to] . . . massacres, scorched earth operations, forced disappearances and executions . . . .

---

[1]These facts derive in substantial part from Mendoza-Pablo's testimony before the Immigration Judge ("IJ"). Because the IJ found his testimony credible, and this finding was upheld by the BIA, we accept as true the facts testified to by Mendoza-Pablo. *See Ladha v. INS,* 215 F.3d 889, 900 (9th Cir. 2000) ("[W]hen an alien credibly testifies to certain facts, those facts are deemed true, and the question remaining to be answered becomes whether these facts, and their reasonable inferences, satisfy the elements of the claim for relief."). For present purposes, this also includes information Mendoza-Pablo credibly testified he learned from his mother about events surrounding his birth and early years.

*Id.* at 150.

During this conflict, the Guatemalan government, "regarding the entire civilian population of many villages as members of guerrilla groups," sought to "physically eliminat[e]" all the people residing in those villages, including children. *See* Guatemala: Never Again! The Official Report of the Human Rights Office, Archdiocese of Guatemala, at 32 (Greta Tovar Siebentritt, trans.) At some point in 1982, when Mendoza-Pablo's mother was eight months pregnant with him, Guatemalan government soldiers, having accused the residents of Todos Santos of aiding the guerrillas, burned the village to the ground, massacring many of the village's inhabitants in the process. Though Mendoza-Pablo's immediate family, along with some other villagers, escaped the attack by hiding in the mountains, his paternal grandparents and two aunts were killed when government soldiers locked them in their homes and burned them alive. Outside observers have estimated that "[i]n Todos Santos (the town) sixty to eighty people were killed in 1981-1982" and "[t]he army also burned an estimated 150 or more houses."

Very shortly thereafter, Mendoza-Pablo was born, several weeks premature. Food was scarce in the mountains and Mendoza-Pablo's mother, unable to breast feed, sought to nourish him with tea made from wild herbs. When he was roughly three months old, Mendoza-Pablo's family decided that, in light of the foregoing events, remaining in Guatemala posed a danger to their lives. Accordingly, the family traveled to Mexico, where, however, they did not have lawful status, as a result of which Mendoza-Pablo was unable to attend school and had difficulty obtaining employment. In addition, Mendoza-Pablo was often sick and frequently had nightmares.[2]

---

[2]In this regard, Mendoza-Pablo testified as follows, "[w]hen I was growing up in Mexico I would often get very sick and then I think it did jeopardize me because I would wake up at night just frightened, having nightmares, frightened and shaking, and I think it's because of all of that time we had spent in the mountains and the things that were happening there."

Eventually, in September 2002, Mendoza-Pablo entered the United States illegally.

In due course, the U.S. Government sought Mendoza-Pablo's removal, and on May 19, 2003, Mendoza-Pablo appeared before an IJ without counsel, and was granted a continuance of removal proceedings to obtain legal representation. On October 16, 2003, he filed with the Department of Homeland Security ("DHS") an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). After the IJ granted two additional continuances — to allow for attorney preparation, for the resolution of a pending Freedom of Information Act request, and for Mendoza-Pablo to retain new counsel — on July 7, 2004, Mendoza-Pablo appeared before the IJ and renewed his applications for asylum, withholding of removal, and CAT protection. On March 20, 2006, four days before the scheduled merits hearing on those applications, counsel for Mendoza-Pablo filed a motion to continue the proceedings so as to "allow time for a psychological evaluation" of Mendoza-Pablo, which had not yet been completed because of "scheduling and monetary restraints." The IJ denied the request, ruling that "no good cause ha[d] been established" for a continuance.

On March 24, 2006, after a merits hearing, the IJ denied Mendoza-Pablo's applications for asylum, withholding of removal, and CAT protection. The IJ found Mendoza-Pablo credible in all respects, but held that the substance of his testimony was insufficient to meet his burden of establishing past persecution. Specifically, the IJ held that Mendoza-Pablo had not been persecuted because he had never personally "witnessed any atrocities" and he was never "personally challenged or confronted" by the Guatemalan military forces that attacked Todos Santos. The IJ further emphasized that Mendoza-Pablo had not adduced any evidence "from a professional standpoint" that he had suffered psychologically as a result of his childhood experiences. Finally, the IJ stated that

the attack on Todos Santos and the resultant deaths of Mendoza-Pablo's extended family members could not constitute persecution "when the event[s] happened during . . . the civil war . . . in Guatemala."

Mendoza-Pablo appealed the IJ's decision to the BIA, which, by Order dated August 9, 2007, affirmed the IJ's decision. Specifically, the BIA held that Mendoza-Pablo's "second hand exposure" to the civil war in Guatemala was insufficient to establish past persecution because he did not personally endure or witness the atrocities perpetrated by the Guatemalan government against his family and ancestral village. Further, the BIA agreed that Mendoza-Pablo's testimony as to any emotional harm he suffered as a result of his childhood experiences was insufficient to constitute past persecution without "expert or objective evidence" that he presently suffers from a psychological disorder stemming from those experiences.[3] The instant petition for review followed.

## DISCUSSION

Because the BIA conducted an independent review of the IJ's findings, we review the BIA's decision and not that of the IJ. *Zheng v. Ashcroft*, 332 F.3d 1186, 1193 (9th Cir. 2003); *see also* INA, 8 U.S.C. § 1252(a)(1) (Courts review the agency's "final order of removal"). We review the BIA's purely

---

[3]The BIA also ruled that Mendoza-Pablo had failed to establish "an objectively reasonable well-founded fear of [future] persecution" because (a) the Guatemalan government's attacks on his family's village occurred over 20 years ago and are thus "too remote" and (b) his "general claim that [he] 'could be killed' by unknown persons is insufficient to support an asylum claim." Similarly, many of the factual circumstances relied on by Judge Rawlinson in her partial dissent relate solely to whether Mendoza-Pablo has a well-founded fear of future persecution. However, because we conclude that the BIA erred in holding that Mendoza-Pablo had not been subject to past persecution, we do not reach this question. On remand, the BIA will have to address this question anew, with the burden of proof properly placed on the Government rather than Mendoza-Pablo. *See Deloso v. Ashcroft,* 393 F.3d 858, 863-64 (9th Cir. 2005).

factual determinations for substantial evidence. *Li v. Holder*, 559 F.3d 1096, 1102 (9th Cir. 2009); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (BIA factual determinations must be upheld if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole"). However, we review *de novo* both "purely legal questions" and "mixed questions of law and fact requiring us to exercise judgment about legal principles." *United States v. Ramos*, 623 F.3d 672, 679 (9th Cir. 2010); *Kankamalage v. INS*, 335 F.3d 858, 861 (9th Cir. 2003). While "[t]he BIA's interpretation of immigration laws is entitled to deference . . . [,] we are not obligated to accept an interpretation clearly contrary to the plain and sensible meaning of the statute." *Kankamalage*, 335 F.3d at 862; *see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984).

The Attorney General may, in his discretion, grant asylum to applicants determined to be refugees within the meaning of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1). An applicant qualifies as a refugee when he "is unable or unwilling to return to his home country because of a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Navas v. INS*, 217 F.3d 646, 654 (9th Cir. 2000). We presume that an applicant has a "well-founded fear of future persecution," and is therefore eligible for asylum, where he presents proof establishing his past persecution. *Fisher v. INS*, 79 F.3d 955, 960 (9th Cir. 1996) (en banc). Once past persecution is established, the burden then shifts to the Government to rebut this presumption by showing, *inter alia*, "a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution." *Deloso v. Ashcroft*, 393 F.3d 858, 863-64 (9th Cir. 2005).

**[1]** Persecution is defined as "the infliction of suffering or harm . . . in a way regarded as offensive." *Li v. Ashcroft*, 356

F.3d 1153, 1158 (9th Cir. 2004) (en banc) (internal quotation marks omitted). We have recognized that, in light of this general definition, persecution can "come[ ] in many forms," including physical, economic, and emotional harm. *See Knezvic v. Ashcroft*, 367 F.3d 1206, 1211 (9th Cir. 2004) (citing cases).

**[2]** This case requires us to determine whether Mendoza-Pablo's early deprivations growing directly out of the unquestionable persecution of his mother and, more generally, his and his parents's fear of further persecution growing directly out of the Guatemalan government's across-the-board persecution of Mayans, constitutes persecution under the INA. Mendoza-Pablo was born in the mountains several weeks premature, very shortly after his pregnant mother fled from Guatemalan government forces that had attacked her ancestral village, burned the village to the ground, and massacred its inhabitants, including several of Mendoza-Pablo's close relatives. Despite his mother's best efforts, Mendoza-Pablo was severely malnourished throughout the first few months of his life, because his mother was too malnourished to breastfeed. Faced with the very real threat of further persecution, the family, just months after the village was massacred, fled the country. Although Mendoza-Pablo's family succeeded in escaping to Mexico, their unlawful status there directly led to further deprivations suffered by Mendoza-Pablo, including lack of schooling and difficulty finding employment.

**[3]** The BIA concluded that the foregoing does not to constitute "persecution" because Mendoza-Pablo's experiences, in its view, constituted "second hand exposure" to the violence perpetrated against the inhabitants of Todos Santos. As an initial matter, it is clear from our case law that an infant can be the victim of persecution, even though he has no present recollection of the events that constituted his persecution. *See Benyamin v. Holder*, 579 F.3d 970, 792 (9th Cir. 2009) (enduring genital mutilation as a five-day-old infant consti-

tutes persecution).[4] Indeed, at least three Courts of Appeals in other Circuits have indicated that the quantum of harm suffered by a child "may be relatively less than that of an adult and still qualify as persecution." U.S. Dep't of Justice, Guidelines for Children's Asylum Claims, 1998 WL 34032561 (1998); *see Liu v. Ashcroft*, 380 F.3d 307, 314 (7th Cir. 2004) ("age can be a critical factor in the adjudication of asylum claims and may bear heavily on the question of whether an applicant was persecuted or whether she holds a well-founded fear of future persecution"); *Jorge-Tzoc v. Gonzales*, 435 F.3d 146,150 (2d Cir. 2006) (same); *Abay v. Ashcroft*, 368 F.3d 634, 640 (6th Cir. 2004) (same). Furthermore, as we held in *Hernandez-Ortiz v. Gonzales*, 496 F.3d 1042 (9th Cir. 2007):

> Three sister circuits have now vindicated a principle that is surely a matter of common sense: a child's reaction to injuries to his family is different from an adult's. The child is part of the family, the wound to the family is personal, the trauma apt to be lasting. . . . We now join the Second, Sixth, and Seventh Circuits in affirming the legal rule that injuries to a family must be considered in an asylum case where the events that form the basis of the past persecution claim were perceived when the petitioner was a child.

*Id.* at 1045-46. Accordingly, the harms suffered by Mendoza-Pablo's family members "must be considered" in assessing

---

[4]Judge Rawlinson objects that *Benyamin* is distinguishable from the instant case in that "the infant in *Benyamin* was directly subjected to a physical injury." This distinction, however, is not controlling. We have repeatedly held that physical injury is not a necessary prerequisite to persecution. *See Knezvic*, 367 F.3d at 1211 (collecting cases in which we held that persecution can include, *inter alia*, "severe harassment, threats, violence, and discrimination"; "forced institutionalization"; "violence against family, and seizure of family land and ration card"; and "mental, emotional, and psychological harm").

whether the events of his childhood rise to the level of past persecution.

Moreover, as we have consistently recognized, being forced to flee from one's home in the face of an immediate threat of severe physical violence or death is squarely encompassed within the rubric of persecution, as long as the persecutors' actions are motivated by the victim's race or some other protected consideration. *See Knezvic*, 367 F.3d at 1211; *see also Khup v. Ashcroft*, 376 F.3d 898, 903 (9th Cir. 2004) (threats of serious harm or death may constitute persecution). For instance, in *Knezvic*, we held that the petitioners, who are of Serbian ethnicity, had suffered persecution during the civil war in the former Yugoslavia when they were forced to "fle[e] their hometown" because they believed that "shelling and bombardment by hostile Croat army forces threatened their lives." *Id.* at 1208-09 (also noting that the petitioners' "business and home were destroyed").

Here, Mendoza-Pablo's pregnant mother, like the petitioners in *Knezvic*, fled from her home village as a result of her (eminently-reasonable) belief that her life — as well the life of the child in her womb — was in severe and immediate danger because Guatemalan military forces had specifically targeted the village's inhabitants on the basis of their racial and ethnic background. The tragic seriousness of the danger was confirmed when several of Mendoza-Pablo's relatives were locked inside of their homes and burned alive by Guatemalan government soldiers.

**[4]** The persecution of Mendoza-Pablo's pregnant mother directly informs everything that happened to him in the weeks and months thereafter. Prematurely born to his distraught and persecuted mother, Mendoza-Pablo suffered intensely during his first three months of life because of severe malnourishment occasioned by his mother's flight to the mountains. While the precise long-term effect of these circumstances on Mendoza-Pablo's physical and mental development may well

be impossible to determine,[5] it would fly in the face of common experience not to recognize the likelihood that these deprivations would have some deleterious and long-lasting effects.[6] Moreover, the well-grounded fear that the government would continue to persecute the remaining family members because of their Mayan ethnicity not only placed the family in continuous fear but also directly precipitated their flight to Mexico, which in turn inflicted further serious deprivations on petitioner.

[5] Accordingly, on the particular facts of this case, we conclude that where a pregnant mother is persecuted in a manner that materially impedes her ability to provide for the basic needs of her child, where that child's family has undisputedly suffered severe persecution, and where the newborn child suffers serious deprivations directly attributable not only to those facts, but also to the material ongoing threat of continued persecution of the child and the child's family, that child may be said to have suffered persecution and therefore be eligible for asylum under the INA. *See Jorge-Tzoc*, 435 F.3d at 150 (concluding that the petitioner suffered persecution where he "was a child [of seven] at the time of the massa-

---

[5]To the extent that the dissent suggests that suffering "lingering effects" in the form of clinically diagnosable psychological illness or permanent physical injury is a prerequisite to proving past persecution, this is not supported by the case law of this Circuit. *See, e.g.*, *Singh v. I.N.S.*, 94 F.3d 1353 (9th Cir. 1996) (past persecution established by threats and violence not resulting in permanent injuries).

[6]Nothing in the INA or its implementing regulations requires that a petitioner produce "objective" or "expert" evidence. *See Brucaj v. Ashcroft*, 381 F.3d 602 (7th Cir. 2004) (no expert testimony required to substantiate the psychological trauma associated with a petitioner's persecution); 8 C.F.R. § 1208.13(a) ("The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration"). Nevertheless, the record in this very case indicates that large numbers of ethnic Mayans who fled Guatemala to Mexico during the civil war continue to suffer from a variety of mental illnesses stemming from "traumatic events" that occurred during the war, including "lack of food," "lack of housing," and "lack of refuge or housing."

cres . . . and thus necessarily dependant on both his family and his community" to an extent that an adult is not).[7]

**[6]** For the foregoing reasons, we conclude that the BIA's ruling that Mendoza-Pablo did not suffer past persecution because his exposure to persecution was "second hand" reflects an incorrect view of the applicable law, which permits the BIA to take account of the indirect effects of persecution as well as the direct effects, at least where, as here, the connection between the two is so immediate and strong. We therefore remand Mendoza-Pablo's petition to the BIA for further proceedings not inconsistent with this Opinion.

**PETITION GRANTED; REMANDED** for further proceedings.

---

RAWLINSON, Circuit Judge, concurring in part, and dissenting in part:

I agree in principle that an infant may be subjected to persecution. However, I do not agree that the facts of this case compel a conclusion that Petitioner Juan Ubaldo Mendoza-Pablo was subjected to persecution as an infant. I respectfully dissent.

Mendoza-Pablo was informed by his mother that he was born several weeks premature, and was malnourished because of the family's forced retreat into the mountains, where food was scarce. When Mendoza-Pablo was approximately three months old, Mendoza-Pablo's family fled to Mexico. In Mex-

---

[7]In light of these conclusions, we need not reach Mendoza-Pablo's contention that the IJ abused her discretion in denying Mendoza-Pablo's request for a continuance so as to obtain a professional psychological assessment. On remand the BIA may nevertheless, in its discretion, choose to remand to the IJ so that the record may be supplemented by a psychological report.

ico, Mendoza-Pablo was unable to attend school and experienced difficulty in finding employment. Mendoza-Pablo also reported frequent illness and recurring nightmares.

When asked why he was seeking asylum, Mendoza-Pablo responded, "I'm applying for asylum because I don't have papers or anything . . . I don't have where to live [sic]. I don't have anywhere to go. . . ." [1] When asked what would happen if he returned to Guatemala, Mendoza-Pablo replied that he "could be killed or other things that happened to [his] family could also happen to [him]." However, when asked the identity of his potential killer(s), Mendoza-Pablo admitted that he did not actually have any ideas as to who might want to kill him. He speculated that the indigenous people "like [him]" would want to kill him, but then conceded that he was not identifiable as indigenous from his appearance.

Mendoza-Pablo never articulated a concrete reason to support his asserted fear of being killed. When the subject was raised for the final time during the hearing, the best explanation he could muster was:

> Well within me I just feel that if I were to be there that I am an unknown person, that someone *could* kill me there. It's just things that I think about and it's something that I am afraid of.
>
> . . .
>
> Well I'm just afraid that because I'm someone that's unfamiliar, an unknown person, that someone would kill me or *perhaps* someone burn me, or *per-*

---

[1]The majority ignores this testimony and relies on Mendoza-Pablo's later testimony that he "thought" the time spent in the mountains "jeopardized" him. *Majority Opinion*, p. 1214 n.2. However, Mendoza-Pablo admitted that he had absolutely no memory of the time spent in the mountains.

*haps* something like that could happen to me although *I have no memory of all of that. I don't remember any of that.*
(Emphases added).

The Immigration Judge (IJ) credited Mendoza-Pablo's testimony, but held that the testimony was not sufficient to meet Mendoza-Pablo's burden of establishing either past persecution or a well-founded fear of future persecution on account of a protected ground. The IJ based his finding on the following observations:

1.   Mendoza-Pablo's claim of psychological trauma was not supported by any evidence.

2.   Mendoza-Pablo did not suffer persecution as defined by the BIA in *Matter of Chen*, 20 I&N Dec. 16 (BIA 1989). The IJ specifically noted that Mendoza-Pablo never personally witnessed any of the atrocities inflicted upon his family members and that Mendoza-Pablo was never personally confronted by the persecutors.

3.   The fact that Mendoza-Pablo witnessed his mother crying does not rise to the level of persecution.

4.   Mendoza-Pablo presented no evidence of any negative residual effect of the three months he spent in the mountains as an infant.

5.   Mendoza-Pablo's expressed fear that he would be killed if he returned to Guatemala was objectively unreasonable in view of Mendoza-Pablo's inability to identify anyone who would have reason to kill him.

6.   The persecution of Mendoza-Pablo's family took place over twenty years ago and Mendoza-

Pablo presented no evidence that anyone was seeking to harm Mendoza-Pablo after the expiration of twenty-plus years.

7. Peace accords have been negotiated between the factions previously engaged in civil war in Guatemala and the civil war ceased long ago.[2]

The Board of Immigration Appeals (BIA) affirmed the IJ's denial of relief. The BIA noted that Mendoza-Pablo had absolutely no recollection of the events that formed the basis for his claim of persecution. The BIA explicitly upheld the IJ's determination that Mendoza-Pablo failed to establish that he was the victim of past persecution. The BIA acknowledged that Mendoza-Pablo's persecution claim was predicated primarily on "alleged emotional harm . . ." Nevertheless, the BIA agreed with the IJ that the lack of objective evidence or expert testimony in support of the claimed harm rendered Mendoza-Pablo's claim without merit.

The BIA also agreed with the IJ that Mendoza-Pablo's "second-hand exposure to war" where he "never witnessed any atrocities or was ever personally challenged or confronted," was insufficient to establish past persecution.

Finally, the BIA affirmed the IJ's ruling that there was insufficient evidence in the record to support a finding that Mendoza-Pablo had an objectively reasonable fear of future persecution. The persecution of Mendoza-Pablo's parents was too remote to establish an objectively reasonable fear of future persecution, and Mendoza-Pablo's claims regarding how he would be injured if he returned to Guatemala were entirely speculative.

---

[2]The majority counters that "many" of these facts relate to a fear of future persecution. *Majority Opinion*, p. 1216 n.3. Even so, the majority fails to explain why the findings that address a lack of *past* persecution do not constitute substantial evidence.

It is important to keep in mind that our review of the decision of the Board of Immigration Appeals (BIA) is extremely limited. In order for us to reach a different conclusion, the record must *compel* a different result. *See INS v. Elias-Zacarias*, 502 U.S. 478, 484 (1992); *see also Padash v. INS*, 358 F.3d 1161, 1165 (9th Cir. 2002). So long as there is substantial evidence in the record supporting the BIA's decision, that decision must be upheld. *See id.* Such record evidence supports the BIA's decision in this case.

"Persecution is an extreme concept that does not include every sort of treatment our society regards as offensive. . . ." *Gormley v. Ashcroft*, 364 F.3d 1172, 1176 (9th Cir. 2004) (citation and internal quotation marks omitted). Our precedent generally involves some physical harm to the petitioner to support a claim of past persecution. *See Nahrvani v. Gonzales*, 399 F.3d 1148, 1153 (9th Cir. 2005) ("Physical violence inflicted against an individual often meets the requirement of severity that characterizes persecution. . . .") (citations, alteration, and internal quotation marks omitted). As the BIA stated in its decision, Mendoza-Pablo offered no evidence of physical harm. In addition, Mendoza-Pablo's claim of emotional harm was not substantiated by specific testimony, objective evidence or expert testimony. *See Nahrvani*, 399 F.3d at 1154 (observing that denial of asylum claim was warranted because petitioner failed to substantiate his claim); *see also Ouk v. Gonzales*, 464 F.3d 108, 111 (1st Cir. 2006) (holding that petitioner failed to establish link between emotional harm and alleged persecution). Mendoza-Pablo's description of his struggles in Mexico do not establish past persecution. *See Gormley*, 364 F.3d at 1178-80 (noting that economic disadvantage does not constitute persecution). Similarly, Mendoza-Pablo's vague testimony describing his fear of future persecution was insufficient. *See Lolong v. Gonzales*, 484 F.3d 1173, 1179 (9th Cir. 2007) (en banc) (rejecting a "general, undifferentiated claim" of future persecution).

The cases cited by the majority are easily distinguished. *Benyamin v. Holder*, 579 F.3d 970 (9th Cir. 2000) involved an infant girl who was subjected to female genital mutilation, a practice we have described as a permanent disfigurement of the female genitalia with "serious, potentially life-threatening complications. . . ." *Id.* at 972 (citation omitted). Unlike Mendoza-Pablo, the infant in *Benyamin* was directly subjected to a physical injury with permanent effects, rising to the level of persecution. *See id.*[3]

The cases cited by the majority stand for the unremarkable proposition that age is a factor to be considered in determining whether persecution has occurred. *See Hernandez-Ortiz v. Gonzales*, 496 F.3d 1042 (9th Cir. 2007; *see also Liu v. Ashcroft*, 380 F.3d 307, 314 (7th Cir. 2004); *Jorge-Tzoc v. Gonzales*, 435 F.3d 146, 150 (2d Cir. 2006); *Abay v. Ashcroft*, 368 F.3d 634, 640 (6th Cir. 2004). These cases in no way undermine the administrative resolution of Mendoza-Pablo's asylum claims. Indeed, both the IJ and the BIA expressly considered Mendoza-Pablo's age at the time of the asserted persecution.

The best the majority can do is speculate regarding the likelihood that the "deprivations" experienced by Mendoza-Pablo "would have some deleterious and long-lasting effects. . . ." *Majority Opinion*, p. 1221. The majority cites *Brucaj v. Ashcroft*, 381 F.3d 602 (7th Cir. 2004), for the proposition that the credible testimony of the applicant may sustain his burden of proof. *See Majority Opinion*, p. 1221 n.6. I have no quarrel

---

[3]The majority responds by citing *Knezvic v. Ashcroft*, 367 F.3d 1206, 1211 (9th Cir. 2004) for the proposition that persecution "can include *inter alia*, severe harassment, threats, violence and discrimination; forced institutionalization; violence against family, and seizure of family land and ration card; and mental, emotional and psychological harm." *Majority Opinion*, p. 1219 n.4 (parentheses and internal quotation marks omitted). The flaw in the majority's argument is that the person seeking asylum must prove the persecution. *See Knezvic*, 367 F.3d at 1211, and Mendoza-Pablo failed to do so.

with the expressed proposition. But the proposition is no substitute for evidence. And the evidence in this case, including Mendoza-Pablo's testimony, contains not a shred of proof of any lingering effects of the deprivations he suffered. Faced with this lack of evidence, it is incomprehensible that the majority purports to be compelled to reverse the BIA's ruling. I cannot agree.