11-566-ag
Gjura v. Holder

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————

August Term, 2012

(Argued: September 14, 2012                    Decided: September 25, 2012)

Docket No. 11-566-ag

———————————

FLORA GJURA,

*Petitioner,*

v.

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

*Respondent*.

———————————

Before: POOLER, WESLEY, LOHIER, *Circuit Judges*.

Flora Gjura, a native and citizen of Albania, seeks review of a January 31, 2011, order of the Board of Immigration Appeals reversing the September 9, 2008, decision of Immigration Judge Terry A. Bain, which granted her application for asylum, withholding of removal, and relief under the Convention Against Torture. Because we find young, unmarried Albanian women do not constitute a social group for asylum purposes, the petition for review is denied.

Denied.

———————————

GREGORY G. MAROTTA, Vernon, NJ, for *Petitioner*.

ANDREW B. INSENGA, Trial Attorney, Office of Immigration Litigation, United States Department of Justice (Tony West, Assistant Attorney General, Ada E. Bosque, Senior Litigation Counsel, *on the brief*) Washington, D.C., for *Respondent*.

PER CURIAM:

Flora Gjura, a native and citizen of Albania, seeks review of a January 31, 2011 order of the Board of Immigration Appeals reversing the September 9, 2008 decision of Immigration Judge ("IJ") Terry A. Bain, which granted her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Because we find young, unmarried Albanian women do not constitute a social group for asylum purposes, the petition for review is denied.

## BACKGROUND

Gjura, a native and citizen of Albania, entered the United States on December 25, 2004, under the Visa Waiver Program by using a fraudulent Italian passport and was paroled into the United States. At the time of entry, Gjura admitted to airport officials that she used a fraudulent passport and said she was entering the United States because her parents were handicapped and she wanted to help them. Gjura subsequently was referred to an IJ for an "asylum only" hearing. In 2005, Gjura filed an application for asylum, withholding of removal, and CAT relief, asserting that the Albanian mafia had twice attempted to kidnap and force her into prostitution, and that she feared she, like her sister and cousin, would be kidnapped and killed if she returned to Albania.

After a 2008 merits hearing, the IJ granted Gjura asylum, finding she testified credibly and belonged to a particular social group — "young, unmarried Albanian women" — at risk of being kidnapped and forced into prostitution. The Department of Homeland Security ("DHS") filed an appeal, and in January 2011, the BIA reversed the IJ's decision. *In re Flora Gjura*, No. A098 559 959 (B.I.A. Jan. 31, 2011), rev'g No. A098 559 959 (Immig. Ct. N.Y. City Sept. 9, 2008). The BIA found that the purported social group was "too amorphous" to constitute a

2

protected ground, noting the lack of evidence showing that young, unmarried Albanian women were targeted more than children and married Albanian women. The BIA also found that Gjura failed to show past persecution or a nexus to a protected ground because the evidence did not establish that (1) the attacks rose to the level of persecution, (2) the attacks were for the purpose of human trafficking, and (3) the government was unwilling to provide protection. Based on Gjura's failure to establish these elements of eligibility, the BIA concluded that Gjura demonstrated neither a well-founded fear of being abducted into a prostitution ring nor eligibility for withholding of removal or CAT relief. This appeal followed.

## ANALYSIS

Under the circumstances of this case, we review only the decision of the BIA. *See Aliyev v. Mukasey*, 549 F.3d 111, 115 (2d Cir. 2008) (quoting *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005)) (reviewing the BIA's decision alone since the BIA "did not adopt the decision of the IJ to any extent"). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B) ("administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary"); *see also Bah v. Mukasey*, 529 F.3d 99, 110 (2d Cir. 2008) ("We review *de novo* questions of law and the application of law to undisputed fact."). Because Gjura does not challenge the denial of CAT relief we address only her asylum and withholding of removal claims.

As an initial matter, Gjura contends that the BIA misapplied the clearly erroneous standard of review. To the contrary, the BIA appropriately applied the de novo standard in reviewing whether she met her burden of establishing eligibility for relief. 8 C.F.R § 1003.1(d)(3)(ii).

3

Gjura's claim for relief centered on the Albanian mafia's alleged attempts to kidnap and force her into prostitution because she was a young, unmarried Albanian woman. The BIA reasonably found that Gjura failed to establish that she suffered past persecution on account of her membership in a particular social group. *See Tao Jiang v. Gonzales*, 500 F.3d 137, 141 (2d Cir. 2007) (the BIA's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary"); 8 U.S.C. § 1252(b)(4)(B). Although the attempted kidnappings Gjura experienced rose above "mere harassment," the BIA reasonably found that they did not constitute persecution due to their brief duration and the lack of consequent physical injury. *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 341 (2d Cir. 2006). Contrary to Gjura's argument, she could not establish past persecution based solely on the killings of her sister and cousin. *See Tao Jiang*, 500 F.3d at 141.

The BIA also did not err in finding that Gjura did not establish a nexus between her attacks and her status as a young, unmarried Albanian woman. The BIA reasonably found Gjura failed to establish that her abductors were members of the Albanian mafia, or intended to force her into prostitution. The only evidence Gjura placed in the record to support her claim was her her testimony that she did not recognize her would-be abductors, but assumed they were associated with the mafia. In addition, we join the Sixth Circuit in finding that "young (or those who appear to be young, attractive Albanian women" do not constitute a "social group" for asylum purposes. *Rreshpja v. Gonzales*, 420 F.3d 551 (6th Cir. 2005). In *Rreshpja*, petitioner escaped abduction by an unknown man as she walked home from school. *Id.* at 553. She reported the incident to police, but they never took action. *Id.* The Sixth Circuit held that "young (or those who appear to be young), attractive Albanian women who are forced into

4

prostitution" do not form a social group because "generalized, sweeping classifications" do not establish social groups for asylum purposes. *Id.* at 555. As the Sixth Circuit noted, "a social group may not be circularly defined by the fact it suffers persecution." *Id.* at 556; *see also Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007) (broad characteristics such as wealth and affluence are not sufficiently "particular"); *Gomez v. INS*, 947 F.2d 660, 664 (2d Cir. 1991)("Possession of broadly-based characteristics such as youth and gender will not by itself endow individuals with membership in a particular group.")[1]. As we have previously explained, "[w]hen the harm visited upon members of a group is attributable to the incentives presented to ordinary criminals rather than to persecution, the scales are tipped away from considering those people a "particular social group" within the meaning of the INA." *Ucelo-Gomez*, 509 F.3d at 73.

Additionally, according to the 2006 State Department Country Report, individuals outside of Gjura's defined group were equally subject to abduction and forced prostitution, including married women and children. Because Gjura failed to establish a nexus between her attacks and her membership in a particular social group, the BIA did not err in concluding that she did not establish eligibility for relief based on past persecution. *See Gomez*, 947 F.2d at 664.

To establish eligibility for relief, an applicant must also show that she suffered or will suffer persecution by either the government or private individuals that the government "is unable or unwilling to control." *Rizal v. Gonzales*, 442 F.3d 84, 92 (2d Cir. 2006); *Matter of Acosta*, 19

---

[1] We note that Gjura's proposed social group differs from, and is more amorphous than, the social group defined in *CeCe v. Holder*, 668 F.3d 510, 515 (7th Cir. 2012) (Rover, *J.*, dissenting) (noting expert testimony that "the group of threatened women in Albania is composed of women who are between the ages of sixteen and twenty-six (perhaps twenty-seven) who live alone").

I. & N. Dec. 211, 222, 236 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987). Gjura alleged that the Albanian police repeatedly failed to investigate these attacks and prevent attacks from later occurring to her sister and cousin. However, the BIA reasonably found that Gjura failed to establish that the Albanian government was unable or unwilling to protect her from her alleged attackers. The 2006 State Department Country Report Gjura submitted indicated that the Albanian government had increased its prosecutions of sex traffickers, and was working to address trafficking-related corruption in its police force. Because a showing of government involvement or inability to control is required for a grant of asylum or withholding of removal, the BIA did not err in denying Gjura's application. *See Rizal*, 442 F.3d at 92; *Matter of Acosta*, 19 I. & N. Dec. at 222, 236.

## CONCLUSION

For the reasons given above, the petition for review is denied.